**Appeal Nos. 23-2033, 23-2034, 23-2035, 23-2036, 23-2037, 23-2038, 23-2309**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

———————————————

**RIDESHARE DISPLAYS, INC.,**
*Appellant,*

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor,*

**V.**

**LYFT, INC.,**
*Cross-Appellant.*

————————————————————————————

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2021-01598, IPR2021-01599,
IPR2021-01600, IPR2021-01601, IPR2021-01602

————————————————————————————

**BRIEF FOR INTERVENOR**

FARHEENA Y. RASHEED
  Acting Solicitor
AMY J. NELSON
  Acting Deputy Solicitor
KAKOLI CAPRIHAN
ROBERT E. MCBRIDE
  Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
*Attorneys for the Director of the United States Patent and Trademark Office*

March 12, 2024

## Representative Claims

**U.S. Patent No. 9,892,637**

**Substitute Claim 29.** A method of identifying a vehicle being dispatched to a location of a user having requested a ride from a transportation service, comprising:

when it is determined that the vehicle is within a predetermined distance of the location of the user, generating a notification signal to a mobile communication device associated with the driver;

generating, by creating an indicator, an indicatory signal representing the indicator in response to receiving the notification signal;

displaying, on a display associated with the vehicle, the indicator based on the notification and indicatory signals, the display being located to be visible on the exterior of the vehicle;

displaying the indicator on a mobile communication device associated with the user; and

identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the mobile communication device associated with the user and the indicator being displayed on the display associated with the vehicle.

Appx56-57; Appx1957-1958.

**U.S. Patent No. 10,559,199**

**Substitute Claim 3.** A vehicle identification method implemented as an Application on mobile communication devices over a wireless communication network, comprising:

requesting a ride from a transportation service from a mobile communication device of a user;

determining that a vehicle is within a predetermined distance of the location of the user;

generating a notification signal to a mobile communication device associated with a driver of the vehicle;

generating, by creating an indicator that is specific to a user and driver match, an indicatory signal representing the indicator;

displaying the indicator based on the notification signal on a display associated with the vehicle, the mobile communication device associated with the driver, and the user's mobile communication device, wherein the display associated with the vehicle is located to be visible from the exterior of the vehicle; and

identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the user's mobile communication device and the indicator being displayed on the display associated with the vehicle.

Appx197; Appx1995.

# Table of Contents

I.    Introduction ................................................................................. 1

II.   Statement of the Issues ............................................................. 2

III.  Statement of the Case ............................................................... 4

     A.    Rideshare's substitute claims recite a technological solution rooted in computer and network technology to allow a rider and driver to identify each other by creating and displaying an indicator on the rider's and driver's mobile devices and on the exterior of the vehicle. ................................................................ 4

     B.    The Board's determination that Rideshare's substitute claims are patent eligible under 35 U.S.C. § 101 because the claims, as a whole, are not directed to abstract ideas. ............................... 11

IV.   Summary of the Argument ....................................................... 14

V.    Argument ................................................................................... 16

     A.    Standard of Review .................................................................. 16

     B.    Fundamental principles make clear that claims are patent eligible and not directed to abstract ideas when, as here, they fall within the scientific, technological, and industrial arts. ...................... 16

     C.    The Board correctly concluded that Rideshare's substitute claims are patent eligible under either *Alice* step one or step two. ............................................................................................. 20

          1.    The substitute claims are not directed to an abstract idea, but to a technological process that solves a problem rooted in rideshare technology. .......................... 20

          2.    The substitute claims also pass muster under *Alice* step two because the additional claim elements transform the abstract idea into a patent-eligible application. ....................... 28

     D.    If the panel concludes that precedent is contrary to our position, that precedent should be reconsidered. ....................... 30

VI.  Conclusion ................................................................................ 32

# Table Of Authorities

**Page(s)**

## Cases

*Acceleration Bay, LLC v. Activision Blizzard Inc.,*
    908 F.3d 765 (Fed. Cir. 2018) ........................................................ 16

*Adasa Inc. v. Avery Dennison Corp.,*
    55 F.4th 900 (Fed. Cir. 2022),
    *cert. denied*, 143 S. Ct. 2561, 216 L. Ed. 2d 1181 (2023) ................... 17, 25, 30

*Alice Corp. v. CLS Bank International,*
    573 U.S. 208 (2014) ................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016) ...................................................... 28, 30

*American Axle & Mfg. Inc. v. Neapco Holdings LLC,*
    Docket No. 20-891, 2021 WL 305998 ............................................... 31

*American Axle & Mfg. Inc. v. Neapco Holdings LLC,*
    Docket No. 20-891, 2021 WL 859724 ............................................... 31

*American Axle & Mfg. Inc. v. Neapco Holdings LLC,*
    Docket No. 20-891, 2021 WL 878075 ............................................... 31

*American Axle & Mfg. Inc. v. Neapco Holdings LLC,*
    No. 20-891, 2022 WL 1670811 ......................................................... 1

*Ancora Techs. v. HTC Am.,*
    908 F.3d 1343 (Fed. Cir. 2018) ...................................................... 29

*Association for Molecular Pathology v. Myriad Genetics, Inc.,*
    569 U.S. 576 (2013) ...................................................................... 17

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) ...................................................... 24

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ................................................... *passim*

*Diamond* v. *Diehr*,
450 U.S. 175 (1981) ....................................................................... 18, 19, 20

*Enfish LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ................................................................ 28

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ................................................................. 27

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ................................................................................. 14

*Interactive Wearables, LLC v. Polar Electro Oy et al*,
No. 21-1281, 2023 WL 2817859 ............................................................... 1

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) .......................................................... 16, 28

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ...................................................... 26, 27, 30

*In re Marco Guldenaar Holding B.V.*,
911 F.3d 1157 (Fed. Cir. 2018) ................................................................ 16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) .......................................................................... 17, 20

*McRO Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ................................................................ 28

*Parker v. Flook*,
437 U.S. 584 (1978) ............................................................................... 14

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
827 F.3d 1042 (Fed. Cir. 2016) ................................................................ 28

*Rideshare Displays, Inc. v. Lyft, Inc.*,
No. CV 20-1629-RGA, 2021 WL 4477242 (D. Del. Sept. 30, 2021) ...................... 26

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017) ................................................................ 13

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ................................................................ 16

## Statutes

35 U.S.C. § 100(b)...............................................................................24

35 U.S.C. § 101................................................................................*passim*

## Other Authorities

84 Fed. Reg. 50 (Jan. 7, 2019) ..................................................... 1, 11, 17, 18, 31

84 Fed. Reg. 55942 (Oct. 18, 2019)........................................................... 1, 11

## Statement of Related Cases

The Director is not aware of any other appeal in connection with these proceedings that has previously been before this Court or that is currently pending in any other court. Beyond the case identified in the parties' briefs, the Director is also unaware of any related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I.     Introduction

The Patent Trial and Appeal Board determined that cross-appellee RideShare Display, Inc.'s ("Rideshare's") substitute claims for a technology that enables rideshare drivers and riders to quickly and safely identify each other and ensure that the correct rider is entering the correct driver's vehicle are patent eligible under 35 U.S.C. § 101. The United States Patent and Trademark Office ("USPTO") has intervened in these appeals for the limited purpose of defending that conclusion.

As the USPTO has recently and repeatedly explained in Supreme Court filings, the current state of the law concerning patent eligibility under § 101 would benefit from further clarification. *See* Brief of Amicus Curiae U.S., *Interactive Wearables, LLC v. Polar Electro Oy et al,*, No. 21-1281, 2023 WL 2817859; Brief of Amicus Curiae U.S, *American Axle & Mfg. Inc. v. Neapco Holdings LLC*, No. 20-891, 2022 WL 1670811. Ambiguity in the governing legal framework has made it difficult for "inventors, businesses, and other patent stakeholders to reliably and predictably determine what subject matter is patent eligible," and creates "unique challenges for the USPTO." USPTO's 2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50 (Jan. 7, 2019), and as updated by the October 2019 Patent Eligibility Guidance Update, 84 Fed. Reg. 55942 (Oct. 18, 2019). Neither the Supreme Court nor this Court have articulated readily administrable limits on the exclusions from patent eligibility recognized in recent case law. And absent proper guardrails, those

exceptions threaten to imperil the patentability of the kinds of core technological innovations that have long been understood to be patent eligible.

The Board's conclusion here is, however, consistent with the best understanding of the precedents of the Supreme Court and this Court and should be affirmed. Rideshare has not claimed the abstract process of having rideshare drivers and riders identify each other, but rather, a technologically implemented means for facilitating and improving that recognition process through the generation and transmission of unique identifiers on mobile devices and vehicle displays. Under this Court's precedents, this technological solution is patent eligible. Indeed, when properly understood, § 101 will seldom imperil innovations within patent law's traditional bailiwick of the scientific, technological, and industrial arts—like the ones at issue here. This Court should help restore clarity to the law in this area and affirm the Board's decision.

## II.    Statement of the Issues

The substitute claims are directed to methods for identifying rideshare customers, drivers, and vehicles comprising the steps of generating a notification signal to the mobile device of the driver when the driver is within a predetermined distance of the rider, and creating and displaying a unique indicator on the rider's and driver's mobile devices, and on a vehicle display that is visible from the exterior of the vehicle. This method enables a rideshare driver and rider to safely and quickly identify each other and ensure that the correct rider is entering the correct driver's vehicle.

The Board determined that the claims are patent eligible under 35 U.S.C. § 101. In particular, considering the claims as a whole, the Board determined that these claims are not directed to an abstract idea, but to an improvement in a technological process rooted in computers and networks, that uses signaling and automation to coordinate communications between the dispatch service, driver, and rider when the driver and rider are within a pre-determined distance from each other, and automates secure identification of drivers and riders through the generation of a unique identifier that is displayed on mobile devices of the rider and driver and on the exterior of the driver's vehicle.

The USPTO has intervened to address the following issues:

(1) Whether a claim that falls within patent law's traditional bailiwick of the scientific, technological, and industrial arts, and does not encompass either a building block of human innovation or a nontechnological innovation, such as a fundamental economic practice, can be excluded from patent eligibility under Section 101 as an abstract idea.

(2) Whether a claim reciting a technological solution rooted in computer or network technology can be found to be "directed to" an abstract idea based solely on either the fact that the technology is used to facilitate human coordination (here, the process of riders and drivers recognizing and validating each other) or because the technological solution utilizes generic computer components.

3

This Court should conclude that the substitute claims are patent eligible and affirm the Board's decision on that issue.

## III.    Statement of the Case

Lyft, Inc. ("Lyft") filed petitions for inter partes review ("IPR") challenging several claims of U.S. Patent Nos. 9,892,637 and 10,599,199 owned by Rideshare, which relate to vehicle identification methods and systems designed to assist a rideshare driver and rider in identifying each other. The Patent Trial and Appeal Board ("Board") determined that Lyft had shown by a preponderance of the evidence that the challenged claims are unpatentable over the prior art of record. The Board granted Rideshare's motions to enter substitute claims 29, 31, and 32 of the '637 patent and substitute claims 3 and 4 of the '199 patent (collectively, "the substitute claims"), which the Board found patent eligible. Lyft challenges the Board's patent eligibility determinations in its cross-appeal.

### A.    Rideshare's substitute claims recite a technological solution rooted in computer and network technology to allow a rider and driver to identify each other by creating and displaying an indicator on the rider's and driver's mobile devices and on the exterior of the vehicle.

Rideshare's '637 patent and '199 patent, which share a common specification,[1] describe a technological solution rooted in computer or network technology that enable rideshare drivers and riders to quickly and safely identify and validate one

_____

[1] The Director cites to the '637 patent specification, unless otherwise specified.

another. As background, the specification acknowledges the rise of on-demand transportation services, such as UBER and LYFT, but notes that a "continuing need exists for systems and methods adapted for use by transportation services to ensure rider and driver security." Appx245 at 1:56-58. To meet such a need, the specification describes systems and processes in which the controller generates and transmits a first signal, via a transceiver, to the mobile device of the driver when a driver and rider are within a pre-determined distance, and then the driver's mobile device creates a second signal (a unique indicator) that is displayed on the rider's and driver's mobile devices, as well as on an externally visible display on the driver's vehicle, which allows the rider to identify a vehicle prior to boarding it and further allows the driver to verify that they are picking up the person who actually requested the ride service. *See e.g.*, Appx240 at Abstract, Appx245 at 1:20–25; Appx246 at 3:5–50; Appx247 at 5:35–65.

Figures 1A and 1B, as shown below, illustrate the components of Rideshare's system for vehicle identification. Appx241; Appx242; Appx245 at 2:35–40.



**FIG. 1A**

**FIG. 1B**

In particular, Figure 1A depicts that the vehicle identification system 10 includes

controller 110, transceiver 120, mobile devices 140 (associated with the rider), mobile

device 150 (associated with the driver), and one or more displays (e.g., display 130 and display 131) associated with the driver's vehicle 20. Appx246 at 3:54–60. In some embodiments, controller 110, which may be a computer network or a server, can be coupled to transceiver 120, which can consist of one or more cell phone towers or satellites that are capable of wireless communication with mobile device 150, associated with driver D, and mobile device 140, associated with user/rider P. *Id.* at 3:60-4:3.

The specification discloses that controller 110 can generate a first signal, also known as a notification signal, that is transmitted via transceiver 120 to the driver's mobile communication device 150. Appx247 at 5:1-4. This notification signal can be generated when the driver's vehicle 20 approaches a pre-determined distance from the pick-up location of the rider. *Id.* at 5:6-8. The driver's mobile device 150 can then generate one or more second signals, also known as an indicatory signal, which may be displayable as a "code" (e.g., a text string or an alphanumeric string), an icon, or other identifier, on display 130 on driver's vehicle 20 and on mobile communication device 140, associated with user/rider P, to enable the user to identify the vehicle that he or she has requested for a ride service. Appx247 at 5:15-35; Appx246 at 4:4–10.

In the embodiment of Figure 1B, the controller generates indicatory signal 14, which is transmitted to the mobile communication device associated with user P, and notification signal 15, which is transmitted to the mobile communication device associated with driver D. *Id.* at 5:40–45. In this embodiment, the driver's mobile

7

communication device does not communicate with the user's mobile communication device, thereby accommodating users who prefer to communicate with the dispatching device rather than with driver D. *Id.* at 5:45–50.

Figure 3, as shown below, depicts a flowchart illustrating a method of identifying a rideshare vehicle dispatched to a location of a user having requested a ride from a transportation service. *Id.* at 6:62–6:64; Appx244.



**Fig. 3**

In particular, when it is determined that the driver's vehicle 20 (as depicted in Figure 1A, for example) is within a predetermined distance of the location of user P, notification signal 15 is generated and sent to mobile communication device 150 associated with driver D. Appx244 at Fig 3, block 310. In response to receiving

8

notification signal 15, indicatory signal 17 representing indicator 111 is generated. *Id.* at Fig. 3, block 320. Indicator 111 is then displayed on display 130 on the driver's vehicle 20. *Id.* at Fig. 3, block 330. Display 130 is visible on the exterior of the driver's vehicle 20. *Id.* at 7:8–9. Indicator 111 is also displayed on mobile communication device 140 associated with user P. *Id.* at Fig. 3, block 340. User P can then use the indicator to identify the driver's vehicle 20, by comparing the indicator being displayed on the mobile communication device associated with user P and the indicator being displayed on the display associated with vehicle 20 and determining if they match. *Id.* at Fig. 3, block 350.

Substitute claim 29 of the '637 patent and substitute claim 3 of the '199 patent are representative. Substitute claim 29 recites:

> A method of identifying a vehicle being dispatched to a location of a user having requested a ride from a transportation service, comprising:
>
> when it is determined that the vehicle is within a predetermined distance of the location of the user, generating a notification signal to a mobile communication device associated with the driver;
>
> generating, by creating an indicator, an indicatory signal representing the indicator in response to receiving the notification signal;
>
> displaying, on a display associated with the vehicle, the indicator based on the notification and indicatory signals, the display being located to be visible on the exterior of the vehicle;
>
> displaying the indicator on a mobile communication device associated with the user; and

identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the mobile communication device associated with the user and the indicator being displayed on the display associated with the vehicle.

Appx56-57; Appx1957-1958. Substitute claim 3 recites:

A vehicle identification method implemented as an Application on mobile communication devices over a wireless communication network, comprising:

requesting a ride from a transportation service from a mobile communication device of a user;

determining that a vehicle is within a predetermined distance of the location of the user;

generating a notification signal to a mobile communication device associated with a driver of the vehicle;

generating, by creating an indicator that is specific to a user and driver match, an indicatory signal representing the indicator;

displaying the indicator based on the notification signal on a display associated with the vehicle, the mobile communication device associated with the driver, and the user's mobile communication device, wherein the display associated with the vehicle is located to be visible from the exterior of the vehicle; and

identifying the vehicle based on appearance of a match, by visual observation of the user, between the indicator being displayed on the user's mobile communication device and the indicator being displayed on the display associated with the vehicle.

Appx197; Appx1995.

**B.     The Board's determination that Rideshare's substitute claims are patent eligible under 35 U.S.C. § 101 because the claims, as a whole, are not directed to abstract ideas.**

In the final written decisions on the '637 and '199 patents, the Board determined that substitute claims 29, 31, and 32, which replaced original claims 9, 11, and 12 of the '637 patent, and substitute claims 3 and 4, which replaced original claims 1 and 2 of the '199 patent, satisfy the statutory and regulatory requirements for patentability, Appx71; Appx210, including 35 U.S.C. § 101.[2] Appx64-66; *see also* Appx2018-2021; Appx204-206; *see also* Appx2041-2044.

The Board applied the Supreme Court's two-part eligibility framework from *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), as referenced in the USPTO's 2019 Revised Patent Subject Matter Eligibility Guidance, 84 Fed. Reg. 50, 54 (Jan. 7, 2019) ("Guidance"), and as updated by the October 2019 Patent Eligibility Guidance Update, 84 Fed. Reg. 55942 (Oct. 18, 2019), and concluded that the substitute claims are not directed to an abstract idea.[3] Appx64-66; *see also* Appx2018-2021; Appx204-206; *see also* Appx2041-2044. While the Board found that the

---

[2] Although the Board determined that substitute claims 21 and 28 of the '637 patent, which are to the "vehicle identification system" (Appx1957; Appx1959), are eligible for patentability under § 101 (Appx65; Appx2019-2021), the Board found them to be otherwise unpatentable (Appx59-61; Appx2008).

[3] The USPTO's Guidance synthesizes the Supreme Court's and this Court's patent eligibility precedent. *Alice* step one corresponds to the 2019 Guidance's step 2A (prongs one and two), and *Alice* step two corresponds to the 2019 Guidance's step 2B. The USPTO's Guidance has been incorporated into the USPTO's Manual of Patent Examining Procedure ("MPEP") § 2106 (9th ed. June 2020).

substitute claims recite a method of organizing human activity (e.g., enabling a user to identify a dispatched cab), the Board determined that the claims, as a whole, integrate the abstract idea into a practical application and thus, are not directed to an abstract idea. Appx65 (citing Appx2019-2021); Appx204 (citing Appx2042-2044).

With respect to substitute claim 29 of the '637 patent, the Board observed that the claim recites a combination of additional elements, including:

- generating a notification signal to a mobile communication device associated with the vehicle's driver when it is determined that the vehicle is within a predetermined distance of the location of the user,
- creating an indicator and indicatory signal representing the indicator in response to receiving the notification signal,
- displaying the indicator on an exterior vehicle display, based on the notification and indicatory signals,
- and also displaying the indicator on a mobile communication device associated with the user.

Appx2019. Turning to the '637 patent specification, the Board determined that this combination of additional elements provides a practical technological application via automation and signaling to improve rideshare technology. Appx2019 (citing Appx245 at 1:20–25; Appx246 at 3:5–50; Appx247 at 5:35–65; Appx240 at Abstract.)

The Board determined that substitute claim 29 recites technological features that enable communication and coordination between multiple devices that are not co-located and are moving with respect to each other. Appx2020. In particular, the Board pointed to the vehicle identification system communicating and generating notification signals to a driver's mobile device, and communicating and generating

12

indicators to a user's mobile device and vehicle's display, based on the vehicle's location and distance to the user's mobile communication device. *Id.* Furthermore, the Board determined that the signaling and automation recited in substitute claim 29 effect an improvement to ridesharing technology by coordinating communications between dispatch services, vehicles, and customers, to automate the secure identification of vehicles by customers and customers by drivers. *Id.* Accordingly, the Board concluded that the claim provides a technological solution rooted in computer and network technologies to a problem in rideshare technology. Appx2020-2021 (citing Appx 245 at 1:20–25, 1:61–2:26; Appx240 at Abstract; *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–58 (Fed. Cir. 2014); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259–60 (Fed. Cir. 2017). The Board indicated that the same reasoning applies to substitute claims 31 and 32 which depend from substitute claim 29. Appx2020.

The Board determined that Lyft had not persuasively addressed the Board's initial assessment that the substitute claims "recite technological features that enable communication and coordination between multiple devices that are not co-located and are moving with respect to each other." Appx66 (citing Appx2020). The Board thus concluded that substitute claims 29, 31, and 32 are patent eligible under § 101.

The Board made similar determinations with respect to the substitute claims in the '199 patent. Appx204-206; Appx2041-2044. In particular, the Board concluded that substitute claim 3 (like substitute claim 29), "recites technological features that

enable communication and coordination between multiple devices that are not co-located and are moving with respect to each other," and therefore "provides a technological solution rooted in computer and network technologies," and that Lyft had failed to demonstrate otherwise. Appx205 (citing Appx2043). The Board indicated that the same reasoning applied to substitute claim 4, which depends on substitute claim 3. Appx205-206; Appx2043.

## IV.    Summary of the Argument

The abstract idea exception, when properly construed, helps to cabin Section 101's reach to patent law's traditional bailiwick of the scientific, technological, and industrial arts. Thus, the exception precludes the patenting of both the fundamental building blocks of technological innovations (e.g., intellectual concepts, such as mathematical algorithms) and innovations in non-technological fields (e.g., methods of organizing human activity, such as fundamental economic practices). *Gottschalk v. Benson*, 409 U.S. 63, 67, 72 (1972); *Parker v. Flook*, 437 U.S. 584, 585 (1978). The purpose of the abstract idea exception is to screen out the sorts of non-technological innovations that do not warrant patent protection, even if they are novel, nonobvious, and adequately enabled. The substitute claims here fall within the traditional bailiwick of the scientific, technological, and industrial arts, and should be patent eligible under Section 101. The claims do not attempt to tie up either a fundamental building block of innovation or an innovation in a non-technological field, and thus are not within the abstract idea exception.

The Board properly concluded that Rideshare's substitute claims are directed to patent eligible subject matter under the *Alice* framework. The substitute claims are directed to a process that uses a combination of hardware and software technology, not to an abstract idea, and are thus patent eligible under *Alice* step one. The claimed process provides a technological solution rooted in networks and computers that solves the problem of rideshare drivers and riders safely and quickly identifying each other, using a combination of technological components (two mobile devices and a display on a vehicle), the automatic signaling between them, and the automatic generation of a unique indicator. The only human involvement occurs either before (requesting a ride) or after (identifying the correct vehicle/passenger) the claimed method. Including these additional claim limitations cannot transform an otherwise patent eligible claim into a patent ineligible claim. Lyft's argument that the substitute claims are directed only to methods of organizing human activity because they do not recite an improvement to computer functionality is misguided and ignores this Court's precedent, which holds that technological solutions rooted in computer or network technology are patent eligible regardless of whether conventional computer components are used.

Alternatively, though the Court need not reach *Alice* step two, the substitute claims are eligible under step two because the additional limitations, considered both individually and as an ordered combination, transform the abstract idea into a patent-

15

eligible application. Lyft's argument that the patents only describe generic computer components misses the mark, as noted above.

This Court should affirm the Board's decision and provide much needed clarity on the application of 35 U.S.C. § 101 generally, and specifically to computer-based inventions.

## V.     Argument

### A.     Standard of Review

Lyft has the burden to show that the Board committed reversible error in its determination that the substitute claims recite patent eligible subject matter. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Patent eligibility is a question of law that may contain underlying issues of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). This Court reviews the Board's legal determination de novo and its findings of fact for substantial evidence. *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1159 (Fed. Cir. 2018); *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 769 (Fed. Cir. 2018).

### B.     Fundamental principles make clear that claims are patent eligible and not directed to abstract ideas when, as here, they fall within the scientific, technological, and industrial arts.

Section 101 of the Patent Act provides that patents may be issued for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. While the four categories of patent

eligible subject matter are expansive, the Supreme Court has identified three "implicit" exceptions to patent eligibility grounded in history and longstanding practice: "Laws of nature, natural phenomena, and abstract ideas" are all unpatentable. *Alice*, 573 U.S. at 216 (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

To determine whether a claim falls within these implicit exceptions, this Court applies the Supreme Court's two-step *Alice* framework. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2561, 216 L. Ed. 2d 1181 (2023) (citation omitted). First, at step one, this Court determines whether the claims at issue are "directed to" a patent-ineligible concept, e.g., an abstract idea. *Alice*, 573 U.S. at 218; *see* Guidance, 84 Fed. Reg. at 53. If so, the analysis proceeds to step two. *Alice*, 573 U.S. at 221. Under *Alice* step two, the Court determines if the claims' additional elements, considered both individually and as an ordered combination, amount to significantly more than the patent-ineligible concept such that they "'transform the nature of the claim' into a patent-eligible application." *Id.* at 217-18 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)); *see* Guidance, 84 Fed. Reg. at 56.

Generally speaking, technologies and industrial processes are not abstract ideas, and that principle helps guide application of the abstract idea exception. *See, e.g.*, *Alice*, 573 U.S. at 223 (explaining that Section 101 does not preclude patenting an invention "designed to solve a technological problem in 'conventional industry practice'")

(quoting *Diamond* v. *Diehr*, 450 U.S. 175, 177 (1981)). That understanding reflects the fact that such inventions have "historically been eligible to receive the protection of our patent laws." *Diehr*, 450 U.S. at 184. Those categories of inventions are, indeed, precisely the sort of "new and useful process [or] machine" that Congress had in mind in Section 101. 35 U.S.C. § 101. And industrial and technological inventions generally do not attempt to patent the paradigmatic "building blocks of human ingenuity" that the abstract ideas exception is designed to protect, such as mathematical formulas, intellectual processes, or fundamental economic principles or practices. *See Alice*, 573 U.S. at 216; Guidance, 84 Fed. Reg. 50, 52 (January 7, 2019) (describing routine categories of abstract ideas and citing cases). Although borderline cases exist—and *Alice*'s two-step framework exists to assess them—those categories of quintessential, non-abstract innovations serve as useful conceptual anchors for delimiting the abstract-idea category. The category of patent-ineligible abstract ideas thus does not encompass technological inventions, like the technological process for identifying rideshare riders and vehicles as recited in Rideshare's substitute claims.

The claims held to be patent-eligible in *Diehr* are illustrative. In *Diehr*, the Supreme Court upheld a patent on a "process for molding precision synthetic rubber products," which included "a step-by-step method for accomplishing" the stated objective. 450 U.S. at 184; *see id.* at 181-193. Although "several steps of the process" required use of a particular "mathematical equation"—the Arrhenius equation—the Court "d[id] not view [the] claims as an attempt to patent [that] mathematical

18

formula" or the relationship it expressed. *Id.* at 185, 192. Instead, the Court held that the claims were "drawn to an industrial process" that used the Arrhenius equation "in conjunction with all of the other steps in the[] claimed process." *Id.* at 187, 192-193; *see id.* at 187 ("[T]he respondents here do not seek to patent a mathematical formula. Instead, they seek patent protection for a process of curing synthetic rubber.").

Likewise, here, although the Board determined that some of the limitations of the substitute claims recite a method of organizing human activity (*see e.g.*, Appx2019), the claims as a whole recite specific technological steps (generating and transmitting a notification signal to the mobile device of the driver, and creating and displaying an indicator on the driver's and rider's mobile devices and on the exterior of the vehicle), which allow rideshare drivers and riders to identify each other safely and quickly. Appx2019-2020; Appx65-66. The gravamen of the claims thus concern a technological process, just as the claim in *Diehr* at its core related to an "industrial process," 450 U.S. at 177.

Accordingly, the claims do not implicate the central purpose of the abstract ideas exception: to avoid "tying up" the fundamental "building blocks" of inventions. *Alice*, 573 U.S. at 216; *see also DDR Holdings*, 773 F.3d at 1259 (determining that the claims at issue do not attempt to preempt every application of the idea of increasing sales by making two web pages look the same). Even if identification of a vehicle were considered to be an abstract method of organizing human activity, others are free to use other means of identification of a vehicle in ridesharing. The particular

technological process in the claims does not seek to "broadly preempt" that general idea, *Mayo*, 566 U.S. at 72, just as claims reciting an industrial process did not preempt the mathematical equation at issue in that case, *Diehr*, 450 U.S. at 177. The claimed invention thus falls comfortably within patent law's traditional bailiwick of the scientific, technological, and industrial arts.

### C.   The Board correctly concluded that Rideshare's substitute claims are patent eligible under either *Alice* step one or step two.

Application of the *Alice* two-step framework confirms the conclusion that the Board correctly concluded that substitute claims 29, 31, and 32 of the '637 patent and substitute claims 3 and 4 of the '199 patent are patent eligible. In particular, under *Alice* Step one, the Board rightly determined that the claims as a whole are not directed to an abstract idea, but instead to a technological process rooted in computers and networks that solves a problem in rideshare technology. Appx64-66; Appx2018-2021; Appx204-206; Appx2041-2044. And the claims would likewise be patent eligible under *Alice* Step two because the additional claim elements transform the abstract idea into a patent-eligible application.

### 1.   The substitute claims are not directed to an abstract idea, but to a technological process that solves a problem rooted in rideshare technology.

The Board correctly concluded that the substitute claims are patent eligible under step one of the *Alice* framework. As the Board determined, the claimed invention is directed to a technological process rooted in computers and networks

that solves a problem arising in rideshare technology. *See DDR Holdings*, 773 F.3d at 1257 (Fed. Cir. 2014) (determining that the claims-at-issue are not directed to an abstract concept because they claim a solution that is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks). The substitute claims here cover a combination of technological components (two mobile devices and a vehicle display), the automatic signaling between them, and the automatic generation of an indicator. Appx1957-1958; Appx2019-2020; Appx1995; Appx2042-2042. In particular, the substitute claims recite a technological process that relies on electrical signals to automatically generate matching images on the rider's (and driver's) mobile devices[4] and on a mounted vehicle display when the devices approach each other. Appx64-66; Appx2018-2021; Appx204-206; Appx2041-2044; Appx245 at 1:20–25; Appx246 at 3:5–50; Appx247 at 5:35–65; Appx240 at Abstract.

The Board found that the method of substitute claim 29, for example, recites a combination of the following technological steps: (1) generating a notification signal to a mobile communication device associated with the vehicle's driver when it is determined that the vehicle is within a predetermined distance of the location of the

---

[4] Substitute claim 29 of the '637 patent recites displaying the indicator on the user's (rider's) mobile device and on the vehicle display. Appx1957-1958. Substitute claim 3 of the '199 patent recites displaying the indicator on the rider's and driver's mobile devices and the vehicle display. Appx1995.

user, (2) creating an indicator and indicatory signal representing the indicator in response to receiving the notification signal, (3) displaying the indicator on an exterior vehicle display, based on the notification and indicatory signals, and (4) displaying the indicator on a mobile communication device associated with the user. Appx2019. And the Board determined that this combination of steps provide a technological process via automations and signaling that "allow the user to identify a vehicle prior to boarding the vehicle" and "allow the driver D to verify that he/she is picking up the person who actually requested the ride service," and thus the steps "recite technological features that enable communication and coordination between multiple devices that are not co-located and are moving with respect to each other." Appx2019-2020.

As the Board correctly concluded, the claimed process seeks to solve a problem in ridesharing technology (the need for drivers and riders to safely and efficiently identify each other) with a solution grounded in technology (signal generation between devices when they come within a certain distance from each other, and display of an indicator on the devices and on the exterior of the vehicle). Appx66. The only human involvement occurs either before the claimed technological process (i.e., the rider requesting a ride) or after the claimed technological process (i.e., by the rider and driver identifying each other). The inclusion of these additional claim limitations cannot transform an otherwise patent eligible claim into a patent ineligible claim.

22

First, Lyft argues that the Board erred in determining that the substitute claims are directed to a technological solution rooted in computer and network technologies, such that the claim is not directed to an abstract idea.[5] Lyft's Principal & Response Brief (D.E. No. 26) ("Lyft Br.") at 53-57. In particular, Lyft argues that the claims are directed to organizing human activity and fail to improve the functioning of a computer or present a novel solution in computing functionality, and thus are directed to an ineligible abstract idea. *Id.* But Lyft's narrow focus on improvements to the functioning of a computer misses the mark. Whether or not the substitute claims improve the functioning of a computer or present a novel solution in computing functionality, they present a technological solution rooted in computer and network technologies that involve creation and transmission of signals, including a unique indicator, between particular computer components (the controller, the driver's mobile device, the rider's mobile device, and the vehicle display that is visible from the exterior of the vehicle), and thus, constitute a technological solution to the problem of rideshare drivers and riders being able to safely and efficiently identify each other. Appx65; Appx2019-2020; Appx205; Appx2042-2043.

---

[5] Rideshare argues that the Board erred in its *Alice* step one analysis that the substitute claims are drawn to an abstract idea. Rideshare Response Br. (D.E. No. 30) at 34-41. Rideshare is misreading the decision. While the Board found that certain limitations recite abstract concepts, the Board determined that under *Alice* step one, the substitute claims, as a whole, are directed to a practical application, i.e., an improvement in technology that solves a technological problem through technological means, and thus are not abstract.

Second, Lyft's argument that the substitute claims are nothing more than a method of organizing human activity because the substitute claims recite generic computer components falls flat. Lyft Br. at 55. Even when a claim does not improve any particular underlying components, it is still patent eligible if it describes a "particular arrangement" of existing components to improve a technological process. *E.g.*, *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Indeed, the statutory definition of a patent-eligible "process" includes "a new use of a *known* process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b) (emphasis added). And such arrangements of components are patent-eligible technological improvements even if they "involve[] an abstract concept" at some level. *Alice*, 573 U.S. at 217 ("At some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'").

Here, as the Board explained, the substitute claims recite an arrangement of specific process steps: (1) generating a notification signal to a mobile communication device associated with the vehicle's driver when it is determined that the vehicle is within a predetermined distance of the location of the user, (2) creating an indicator, and indicatory signal representing the indicator, in response to receiving the notification signal, (3) displaying the indicator on the vehicle display, based on the notification and indicatory signals, (4) and also displaying the indicator on a mobile communication device associated with the user. Appx2019; *see also* Appx2042 (Board's

determination as to claim 3 of the '199 patent). This is a combination of specific technological steps grounded in technology (computer networks, mobile devices, etc.) underlying rideshare services, which allow the rider and driver to verify each other's identifies. Appx2019-2021; Appx2042-2044; Appx65-66; Appx205-206. The claims thus do more than "perform[] an abstract idea on a computer." Lyft Br. at 55. Even if the recited display and mobile device are used in a conventional manner, Rideshare's substitute claims are directed to a combination of steps that provide a technological solution rooted in computers and networks that solves a problem in ridesharing technology.[6] Appx2019-2021; Appx2042-2044; Appx65-66; Appx205-206. Therefore, the claims are patent eligible under Section 101.

Rideshare's substitute claims are similar to other claims found to be patent eligible by this court. *See e.g., DDR Holdings,* 773 F.3d at 1257–58 (holding patent eligible a claim that "address[es] a business challenge (retaining website visitors)" by enabling visitors "to purchase products from the third-party merchant without actually entering that merchant's website," thus providing a "claimed solution . . . necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks"); *Adasa*, 55 F.4th at 908 (determining that claim 1, as a whole, is not directed to an abstract idea, but to a

---

[6] Lyft's argument (Br. 60-61) that the Board gave insufficient consideration to its arguments fails for the same reasons. Even when underlying components are unchanged, a new combination of components can be patent-eligible.

specific, hardware-based RFID serial number data structure designed to enable

technological improvements to the commissioning process, regardless of any

conventionality of the underlying hardware); *Koninklijke KPN N.V. v. Gemalto M2M*

*GmbH*, 942 F.3d 1143, 1150-1151 (Fed. Cir. 2019) (holding claims to be eligible

because they are directed to a specific improvement in the technical process of error-

checking data transmissions).[7]

Third, Lyft wrongly complains that the substitute claims describe each element

of the claimed method only in terms of the end result and thus are not eligible. Lyft

Br. at 56. While "a result … is not itself patentable," "a specific means or method that

solves a problem in an existing technological process" is patent-eligible. *Koninklijke*,

942 F.3d at 1150 (quotation marks omitted). The Board correctly found a "specific

means" for solving a technological problem in this case. *See* Appx2020; Appx66.

Lyft's argument appears to be that each step must nonetheless be broken down into

further steps (such as by explaining how an indicator is generated), but no authority

requires that granular level of explanation for each component—particularly when the

---

[7] Lyft is mistaken that a related district court decision supports its assertion that the claims are directed to an abstract idea. Br. at 55, fn. 4. That decision did not reach the question of patent eligibility and the dicta on which Lyft relies only indicates that court's uncertainty regarding the question of patent eligibility. *See* Appx2046; *Rideshare Displays, Inc. v. Lyft, Inc.,* No. CV 20-1629-RGA, 2021 WL 4477242, at *1 (D. Del. Sept. 30, 2021). Moreover, the district court's decision largely focused on claim 1 of U.S. Patent No. 10,169,987, which does not recite the same sequence of steps as recited in Rideshare's substitute claims. Compare, e.g., substitute claim 29 (Appx1957-1958) with claim 1 of U.S. Patent No. 10,169,987 (Appx257).

claim depends on a new combination of existing technological components that are not themselves being changed. So long as the recited means or method are concrete and "specific" enough to be comprehensible, the claim is patent-eligible. *See Koninklijke*, 942 F.3d at 1150 (rejecting the argument that an improved result without more is not enough to confer eligibility, when the claims recite a specific means or method that solves a problem in an existing technological process, such as error checking in data transmissions).

Fourth, Lyft asserts that the additional limitations in the dependent substitute claims do not convey patent eligible subject matter. That argument is forfeited and lacks merit. Lyft did not raise this particular argument before the Board. Lyft Br. at 56-57; *see* Appx2059-62 (Lyft's sur-reply opposing Rideshare's motion to amend in the '637 patent raising only that the claims recite generic computer components/functionality); Appx2076-2079 (Lyft's sur-reply opposing Rideshare's motion to amend in the '199 patent raising only that the claims recite generic computer components/functionality); *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). In any event, the argument fails because the Board relied on the limitations recited in the independent claims as representative of the eligibility of the substitute claims and found those limitations to be sufficient to confer eligibility. Appx64-66; Appx2018-2021; Appx204-206;

Appx2041-2044. And, again, Lyft only raises generic arguments as to particular computer components recited in the dependent substitute claims and does not grapple with the Board's conclusion that the claims recite a technological solution to solve a problem rooted in rideshare technology.

> ### 2. The substitute claims also pass muster under *Alice* step two because the additional claim elements transform the abstract idea into a patent-eligible application.

There should be no need for this Court to analyze *Alice* step two. As this Court has recognized, although each step of the *Alice* framework involves its own separate inquiry, these analyses often overlap. *Interval Licensing*, 896 F.3d at 1342. Due to this overlap, this Court has sometimes determined that challenged claims can pass muster either under *Alice* step one or step two. *See, e.g., Rapid Litig. Mgmt. Ltd.* v. *CellzDirect, Inc.,* 827 F.3d 1042, 1050 (Fed. Cir. 2016) (holding that the claimed invention is patent eligible because it is not directed to a patent ineligible concept under step one or is an inventive application of the patent-ineligible concept under step two); *Enfish LLC v. Microsoft Corp.,* 822 F.3d 1327, 1339 (Fed. Cir. 2016) (noting that eligibility determination can be reached either because claims not directed to an abstract idea under step one or recite a concrete improvement under step two); *McRO Inc. v. Bandai Namco Games America Inc.,* 837 F.3d 1299, 1313 (Fed. Cir. 2016) (recognizing that the "court must look to the claims as an ordered combination" in determining patentability "[w]hether at step one or step two of the *Alice* test"); *Amdocs (Israel) Ltd.*

*v. Openet Telecom, Inc.,* 841 F.3d 1288, 1294 (Fed. Cir. 2016) (observing that recent cases "suggest that there is considerable overlap between step one and step two, and in some situations [the inventive concept] analysis could be accomplished without going beyond step one"); *see also Ancora Techs.* v. *HTC Am.,* 908 F.3d 1343, 1349 (Fed. Cir. 2018) (noting, in accord with the "recognition of overlaps between some step one and step two considerations," that its conclusion of eligibility at step one is "indirectly reinforced by some of [its] prior holdings under step two").

Accordingly, decisions under step two are often belts and suspenders for analyses that really should have stopped at *Alice* step one. To the extent claims have elements that, considered both individually and as an ordered combination, transform the abstract idea into a patent-eligible application (*Alice*, 573 U.S. at 217), the claims as a whole should generally not be considered "directed to" that abstract idea in the first place. It should be the rare case when the claims, as a whole, are directed to one of the building blocks of innovation (i.e., an intellectual concept or a mathematical algorithm), or when the claims, as a whole, are directed to an innovation in a nontechnological field, such as a fundamental economic practice. In those rare cases, *Alice* step two serves to determine if there are additional elements in the claim that transform the abstract idea into a patent-eligible application.

Tellingly, Lyft repeats its step one argument that Rideshare's patents recite and describe the computer components broadly "with no inventive improvement." Lyft Br. at 57-60. But again, though claims directed to improvements to computers are

patent eligible, so too are claims directed to technological solutions rooted in computer or network technology that solves a technological problem, even if conventional computer components are used. *See e.g., Amdocs.*, 841 F.3d at 1300–01 (Fed. Cir. 2016) (determining the claims at issue patent eligible, despite recitation of generic network computer components, because they entail a technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows); *DDR Holdings,* 773 F.3d at 1257-58; *Adasa*, 55 F.4th at 908; *Koninklijke*, 942 F.3d at 1150-1151 [cited in section IV.B.1.a above with parentheticals]. Thus, for the same reasons articulated above, whether or not the claims recite an improvement to computers or components themselves is beside the point.

### D.    If the panel concludes that precedent is contrary to our position, that precedent should be reconsidered.

While the best reading of existing precedents—and the one that would both incentivize and protect U.S. innovation and investment and bring U.S. law more closely in alignment with the laws of other developed countries—is the one described above, we acknowledge (as we have repeatedly told the Supreme Court) that the precedents in this area are not entirely consistent. Thus, *Lyft*'s argument is not wholly lacking in support. In recent years, some decisions can be construed as having overread the *Alice/May* limitations to preclude patenting of claims that provide a technological solution rooted in computer or network technology if limited to solving a human problem. Likewise, some caselaw suggests (contrary to our argument above)

that a claim is "directed to" an abstract idea even when the claim has technological limitations, provides an application of an ineligible concept, and/or does not preempt the ineligible concept. *See, e.g.*, Guidance, 84 Fed. Reg. 50 (Jan. 7, 2019) (noting that applying this Court's recent Section 101 decisions "in a consistent manner has proven to be difficult"; "has caused uncertainty in this area of the law"; has made it difficult for "inventors, businesses, and other patent stakeholders to reliably and predictably determine what subject matter is patent-eligible"; and "poses unique challenges for the USPTO" itself); *see also* Brief of Amicus Curiae New York Intel. Prop. Law Ass'n Supporting Petitioner, *American Axle & Mfg. Inc. v. Neapco Holdings LLC,* Docket No. 20-891, 2021 WL 305998 at *12-14 (discussing uncertainty caused by recent Section 101 jurisprudence); Brief of Amici Curiae Thom Tillis *et al.* Supporting Petitioner, *American Axle & Mfg. Inc. v. Neapco Holdings LLC*, Docket No. 20-891, 2021 WL 878075 at *5-25 (same); Brief of Amici Curiae Professors Jeffrey A. Lefstin *et al.* Supporting Petitioner, *American Axle & Mfg. Inc. v. Neapco Holdings LLC*, Docket No. 20-891, 2021 WL 859724 at *16-20 (same).

Should the Court disagree that its existing caselaw supports affirmance here, we respectfully suggest that this precedent should be reconsidered. And ultimately, the USPTO continues to believe that further clarification of the law in this area remains necessary. Ultimately, courts should reaffirm that § 101 protects inventions in the technological sphere that has always been the heartland of patent eligibility.

## VI.     Conclusion

The Court should affirm the Board's conclusion.

Dated: March 12, 2024

Respectfully submitted,

/s/ Kakoli Caprihan
FARHEENA Y. RASHEED
Acting Solicitor

AMY J. NELSON
Acting Deputy Solicitor

KAKOLI CAPRIHAN
ROBERT E. MCBRIDE
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the United States
Patent and Trademark Office*

**CERTIFICATE OF COMPLIANCE**

I certify pursuant to Fed. R. App. Proc. 32(a)(7) that the foregoing BRIEF

FOR INTERVENOR complies with the type-volume limitation required by the

Court's rule. The total number of words in the foregoing brief, excluding the table of

contents and the table of authorities, is 7,417 as calculated using the Word® software

program.

/s/ Kakoli Caprihan
Kakoli Caprihan
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035