**United States Patent and Trademark Office**
*Office of the General Counsel*
*Office of the Solicitor*

April 10, 2025

Jarrett B. Perlow
Clerk of the Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Re: *Rideshare Displays, Inc., v. Lyft, Inc.,* Appeal Nos. 23-2033, -2034, -2035, -2036, -2037, -2038, -2039

Dear Mr. Perlow:

Pursuant to Fed. R. App. P. 28(j), the Director writes to advise the Court of this Court's recent decision in *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373 (Fed. Cir. 2024), which provides additional support for the USPTO's argument that Rideshare Display's amended claims are patent eligible under 35 U.S.C. § 101. A copy of the Court's decision is attached hereto as Exhibit A.

Under step one of the framework articulated in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Court determined that the patentee's representative claim is patent eligible because it recites a specific means that improves the relevant technology. *Contour IP Holding*, 113 F.4th at 1379. The Court explained that the claim is directed to a "specific, technological means—parallel data stream recording with the low-quality recording wirelessly transferred to a remote device—that in turn provide a technological improvement to the real time viewing capabilities of a POV [point-of-view] camera's recordings on a remote device." *Id*.

In *Rideshare Displays*, the Board made similar findings in concluding that the substitute claims are patent eligible under step one of the *Alice* framework. In particular, the Board determined that the claims recite a specific technological process that relies on signaling that generates and displays

matching images on the customer's and driver's mobile devices and on a mounted vehicle display when customer and driver are a pre-determined distance from each other, to automate and improve the secure identification of vehicles by customers and customers by drivers. Brief for Intervenor (ECF No.35) at 20-22; Appx64-66; Appx2018-2021. The Board concluded that the claims are not abstract, but provide a particular technological solution rooted in computer and network technologies to a problem in rideshare technology. *Id*.

Respectfully submitted,

/s/ Kakoli Caprihan
Kakoli Caprihan
Associate Solicitor

*Attorney for the Director of the United States Patent and Trademark Office*

cc (via ECF Notice): Counsel of Record

**RULE 28(j) CERTIFICATE OF COMPLIANCE**

I certify pursuant to Fed. R. App. P. 28(j) that the foregoing CITATION OF SUPPLEMENTAL AUTHORITY PURSUANT TO FED. R. APP. P. 28(j) complies with the word limitation required by the Court's rule. The total number of words in the foregoing letter is 292 words as calculated using the Word® software program.

/s/ Kakoli Caprihan
Kakoli Caprihan
Associate Solicitor
U.S. Patent and Trademark Office

# Exhibit A

KeyCite Yellow Flag - Negative Treatment
Distinguished by Glanta Limited v. Soapy Care Ltd., D.Del., January 16, 2025

113 F.4th 1373
United States Court of Appeals, Federal Circuit.

CONTOUR IP HOLDING LLC, Plaintiff-Appellant
v.
GOPRO, INC., Defendant-Appellee

2022-1654, 2022-1691
|
Decided: September 9, 2024

**Synopsis**
**Background:** Patentee brought action for infringement of patents related to portable, point-of-view video cameras. The United States District Court for the Northern District of California, William H. Orrick, J., granted alleged infringer summary judgment on grounds that asserted claims were patent ineligible. Patentee appealed.

**[Holding:]** The Court of Appeals, Reyna, Circuit Judge, held that representative claim was directed to a technological solution to a technological problem, and therefore recited patent-eligible subject matter.

Reversed and remanded.

West Headnotes (16)

**[1]** **Courts** Particular questions or subject matter

Federal Circuit reviews grant of a summary judgment under law of applicable regional circuit.

**[2]** **Federal Courts** Summary judgment

The Ninth Circuit reviews summary judgment determinations de novo.

**[3]** **Courts** Particular questions or subject matter

Federal Circuit reviews patent eligibility under Federal Circuit law. 35 U.S.C.A. § 101.

**[4]** **Patents** Questions of law or fact

Patent eligibility is ultimately a question of law that may be based on underlying factual findings. 35 U.S.C.A. § 101.

**[5]** **Patents** Laws of nature, natural phenomena, and abstract ideas; fundamental principles

Laws of nature, natural phenomena, and abstract ideas are not patentable. 35 U.S.C.A. § 101.

1 Case that cites this headnote

**[6]** **Patents** Laws of nature, natural phenomena, and abstract ideas; fundamental principles

Patentability exception for abstract ideas embodies longstanding rule that an idea of itself is not patentable. 35 U.S.C.A. § 101.

2 Cases that cite this headnote

**[7]** **Patents** Exceptions to Eligibility; Ineligible Subject Matter

At step one of *Alice* patent eligibility test, court determines whether claims are directed to patent-ineligible subject matter. 35 U.S.C.A. § 101.

2 Cases that cite this headnote

**[8]** **Patents** Exceptions to Eligibility; Ineligible Subject Matter

To determine whether patent claims are directed to patent-ineligible subject matter, Federal Circuit often examines focus of claimed advance over prior art. 35 U.S.C.A. § 101.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

[9] **Patents** Exceptions to Eligibility; Ineligible Subject Matter

Federal Circuit conducts analysis of whether claims are directed to patent-ineligible subject matter by ascertaining basic character of claimed subject matter. 35 U.S.C.A. § 101.

1 Case that cites this headnote

[10] **Patents** Exceptions to Eligibility; Ineligible Subject Matter

In analyzing whether patent claims are directed to patent-ineligible subject matter, court must avoid describing claims at a high level of abstraction, divorced from claim language itself. 35 U.S.C.A. § 101.

5 Cases that cite this headnote

[11] **Patents** Laws of nature, natural phenomena, and abstract ideas; fundamental principles

To determine focus of claimed advance at step one of *Alice* patent eligibility test, Federal Circuit looks to whether claims are directed to a specific means or method that improves relevant technology, rather than simply being directed to a result or effect that itself is abstract idea. 35 U.S.C.A. § 101.

8 Cases that cite this headnote

[12] **Patents** Exceptions to Eligibility; Ineligible Subject Matter

An improved result, without more, is not enough to support patent eligibility at *Alice* step one. 35 U.S.C.A. § 101.

[13] **Patents** Laws of nature, natural phenomena, and abstract ideas; fundamental principles

When a patent claim abstractly covers results without regard to a specific process or machinery for achieving those results, it creates preemption concerns, since it would prohibit all other persons from making the same thing by any means whatsoever. 35 U.S.C.A. § 101.

2 Cases that cite this headnote

[14] **Patents** Particular inventions in general

Representative claim of patents related to portable, point-of-view video cameras was directed to a technological solution to a technological problem, and therefore recited patent-eligible subject matter at step one of *Alice* patent eligibility test; claim was directed to a specific means that improved relevant technology, that claim employed known or conventional components that existed in prior art at time of invention did not, alone, necessarily mean that claim was directed to an abstract idea, alleged infringer did not argue that claimed method was a long-known or fundamental practice, and claim described more than wireless data transfer within a particular technological environment and instead enabled claimed camera to operate differently than it otherwise could. 35 U.S.C.A. § 101.

5 Cases that cite this headnote

[15] **Patents** Use or operation of machine or apparatus as affecting process; "machine or transformation" test

Federal Circuit would decline to proceed to second step of *Alice* patent-eligibility inquiry, after finding that representative claims of asserted patents were not directed to patent-ineligible subject matter. 35 U.S.C.A. § 101.

[16] **Patents** In general; utility

US Patent 8,890,954, US Patent 8,896,694. Not Invalid.

***1374** Appeals from the United States District Court for the Northern District of California in Nos. 3:17-cv-04738-WHO, 3:21-cv-02143-WHO, Judge William H. Orrick, III.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**Attorneys and Law Firms**

John R. Keville, Sheppard Mullin Richter & Hampton LLP, Houston, TX, argued for plaintiff-appellant. Also represented by Michael C. Krill; Richard L. Stanley, Law Office of Richard L. Stanley, Houston, TX.

Sean S. Pak, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for defendant-appellee. Also represented by William Adams, New York, NY; Nathan Hamstra, Marc L. Kaplan, Chicago, IL.

Before Prost, Schall, and Reyna, Circuit Judges.

**Opinion**

Reyna, Circuit Judge.

***1375** Contour sued GoPro for patent infringement. According to Contour, several of GoPro's point-of-view digital video camera products infringed its patents. After five years of litigation, GoPro sought summary judgment on grounds that Contour's asserted claims were patent ineligible under 35 U.S.C. § 101. The district court agreed with GoPro and entered judgment against Contour. We reverse and remand for further proceedings.

Background

I

Contour IP Holding LLC ("Contour") owns U.S. Patent Nos. 8,890,954 ("'954 patent") and 8,896,694 ("'694 patent"). The '694 patent is a continuation of the '954 patent, and the two patents share virtually identical specifications. We thus refer to the '954 patent specification when discussing both asserted patents.

The asserted patents relate to portable, point-of-view ("POV") video cameras. '954 patent, 1:14–17. As the name suggests, POV video cameras are often used to capture a scene from a user's point-of-view rather than from a third-person viewpoint. The patents' shared specification explains that at the time the patents were filed, POV cameras were "a relatively new product category," and even those that were not designed to be hands-free were being "adapted to capture POV video by action sports enthusiasts in a hands-free manner." *Id.* at 1:21–23.

The asserted patents disclose a "hands-free, POV action sports video camera" that is "configured for remote image acquisition control and viewing." *Id.* at 1:15–17. The specification explains that often in a sports application, a POV camera is "mounted in a location that does not permit the user to easily see the camera." *Id.* at 19:36–37. A skier, for example, may wish to mount a small POV camera to his helmet. *See id.* at 12:42–45 ("[B]ase mount **130** ... can be attached to a variety of surfaces such as, for example, the surfaces of helmets ...."), 21:66–22:2. In these instances, the user is unable to review what is being recorded in real time on the camera or to even see the camera. In addition, in these circumstances, it is difficult to adjust recording settings or a point of view to better match the user's recording preferences. *See id.* at 19:35–37 ("[I]n a sports application, digital video camera **10** is often mounted in a location that does not permit the user to easily see the camera.").

To address these problems, the patents describe implementing wireless technology in the video camera **10** that allows the camera to send real time information to a remote device, such as a cell phone. *Id.* at 19:48–50. From this remote device, the user can see what is being recorded by the camera. *Id.* at 20:41–44. The user can also make real time adjustments to the recording settings, such as light level and audio settings, before or during an activity. *Id.* at 20:44–47. The skier, for example, can ensure that his descent down the ski slope ***1376** has been recorded to his preferences. *See, e.g.*, *id.* at 20:41–44 ("This wireless connection capability enables a user to configure camera settings in real time and preview what digital video camera **10** sees."); *see also id.* at 22:66–22:53 (describing procedures for adjusting camera position, lighting level, and color settings on the remote device).

Separate from the use of wireless technology itself, the patent also discloses modifications to the camera's system for processing recordings and permitting real time playback. In a key embodiment, the patents disclose that camera **10** is configured to generate video recordings "in two formats, high quality and low quality, in which the lower quality file is streamed" to the remote device. *Compare id.* at 20:9–11, *with id.* at 31:4–11 (limitations recited in claim 11 of the '954 patent). The system thereby achieves real time playback on the remote device without exceeding wireless connection bandwidth. *See, e.g.*, *id.* at 20:13–16 (explaining that "[f]or streaming implementation, wireless connection bandwidth can be monitored to adapt to the available bandwidth the resolution, bit rate, and frame rate on the secondary [(lower quality)] recording"). Using the lower quality recording, the

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

skier gets to see real time progress on the remote device and make adjustments accordingly. The higher quality version of the recording is saved on the camera for later viewing. *See id.* at 19:38–41 (describing using a wireless connection protocol for "remote access to image data stored in digital video camera **10**").

This "dual recording" embodiment is reflected in the two claims at issue in this case, claim 11 of the '954 patent and claim 3 of the '694 patent. The parties agree that claim 11 of the '954 patent may be treated as representative for purposes of the § 101 inquiry. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Claim 11 recites:

> 11. A portable, point of view digital video camera, comprising:
>
> a lens;
>
> an image sensor configured to capture light propagating through the lens and representing a scene, and produce real time video image data of the scene;
>
> a wireless connection protocol device configured to send real time image content by wireless transmission directly to and receive control signals or data signals by wireless transmission directly from a personal portable computing device executing an application; and
>
> a camera processor configured to:
>
> > receive the video image data directly or indirectly from the image sensor,
> >
> > generate from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream,
> >
> > cause the wireless connection protocol device to send the first image data stream directly to the personal portable computing device for display on a display of the personal portable computing device, wherein the personal portable computing device generates the control signals for the video camera, and wherein the control signals comprise at least one of a frame alignment, multi-camera synchronization, remote file access, and a resolution setting, and at least one of a lighting setting, a color setting, and an audio setting,
> >
> > receive the control signals from the personal portable computing device, and
> >
> > adjust one or more settings of the video camera based at least in part on ***1377** at least a portion of the control signals received from the personal portable computing device.

'954 patent, 30:57–31:24.

## II

In 2015, Contour sued GoPro, Inc. ("GoPro"), alleging that several GoPro products infringed claims of the '954 and '694 patents. In 2021, Contour filed a second suit against newer GoPro products, alleging that those products similarly infringed claims of the two asserted patents.

In 2018, in the first lawsuit, the United States District Court for the Northern District of California issued an order construing disputed claim terms in the asserted patents. *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO, 2018 WL 3428606 (N.D. Cal. July 16, 2018) ("*Claim Construction Order*"). In particular, the district court construed a term of claim 11 of the '954 patent that recites: "generat[ing] from the video image data a first image data stream and a second image data stream, wherein the second image data stream is a higher quality than the first image data stream." *Id.* at *5. The district court construed the word "generate" as "record *in parallel* from the video image data." *Id.* (emphasis added). The district court concluded the claim term was limited to recording in parallel because during inter partes review proceedings, Contour asserted that the claims required both data streams be generated from the image sensor data, or "in parallel." *Id.* at *7. Contour argued that generating streams in parallel distinguished the claims from prior art systems with streams created "in sequence," where the high-resolution stream is generated first and down-converted to create a low resolution stream. *Id.*; *see also* GoPro's Responsive Claim Construction Br. at Exs. J, K, *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO (N.D. Cal. May 18, 2018), ECF No. 235.

In 2021, *after* the district court had granted partial summary judgment that GoPro's accused products infringe claim 11 of the '954 patent in the first lawsuit, GoPro challenged claim 11 of the '954 patent and claim 3 of the '694 patent as patent ineligible under 35 U.S.C. § 101. GoPro raised its § 101 challenge in the second lawsuit, initially as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Contour IP Holding, LLC v. GoPro, Inc.*,

No. 3:17-cv-04738-WHO, 2021 WL 4148651, at *6 (N.D. Cal. Sept. 13, 2021) ("*Rule 12(c) Order*"). GoPro filed the motion soon after this court issued its decision in *Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021), and relied heavily on the analysis in *Yu* in making its arguments for ineligibility. *See Rule 12(c) Order*, 2021 WL 4148651, at *7. Like the claims in this case, *Yu* involved claims reciting components of a digital camera. *Yu*, 1 F.4th at 1042. We concluded in *Yu* that the claims were "directed to the abstract idea of taking two pictures (which may be at different exposures) and using one picture to enhance the other in some way." *Id.* at 1043.

The district court denied the motion. *Rule 12(c) Order*, 2021 WL 4148651, at *6. In its ruling on GoPro's motion for judgment on the pleadings, the district court referred to the two-step § 101 inquiry set forth in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014). It observed,

> Contour pleads[ ] it came up with an innovative solution: the camera would stream a low quality video to a smartphone so that the user could watch what was being recorded removed from the camera; it would store a high quality video that would be the one ultimately used; and it would receive specified control signals from the smartphone so that users could control the image removed ***1378** from the camera. This is also reflected in the patents.

*Rule 12(c) Order*, 2021 WL 4148651, at *8 (citations omitted). Although it denied the motion based on Contour's allegations, the district court ruled that its decision was made without prejudice to GoPro's raising § 101 patent ineligibility "again at summary judgment based on a factual record." *Id.* at *6.

At the summary judgment stage, GoPro again argued that the asserted claims were patent ineligible under § 101. *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO, 2022 WL 658553, at *1 (N.D. Cal. Mar. 4, 2022) ("*Decision*"). This time, the district court agreed with GoPro. At *Alice* step one, the district court characterized representative claim 11 as directed to the abstract idea of "creating and transmitting video (at two different resolutions) and adjusting the video's settings remotely." *Id.* at *4. At *Alice* step two, the district court concluded that the claim recites only functional, results-oriented language with "no indication that the physical components are behaving in any way other than their basic, generic tasks." *Id.* at *7. Following its conclusion that the asserted claims were patent ineligible under § 101, the district court entered judgment for GoPro and against Contour.

Contour appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

Standard of Review

**[1]** **[2]** We review the grant of a summary judgment under the law of the applicable regional circuit, in this case, the Ninth Circuit. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146 (Fed. Cir. 2016). The Ninth Circuit reviews summary judgment determinations de novo. *Id.* Summary judgment is appropriate in the Ninth Circuit when, drawing all reasonable inferences in favor of the non-moving party, there are no genuine issues of material fact. *Id.*

**[3]** **[4]** We review § 101 patent eligibility under Federal Circuit law. *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1367 (Fed. Cir. 2017). Eligibility is ultimately a question of law that may be based on underlying factual findings. *Berkheimer*, 881 F.3d at 1365.

Discussion

I

**[5]** **[6]** Section 101 of the Patent Act states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has determined that certain exceptions to the requirements of § 101 exist such that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216, 134 S.Ct. 2347 (citation omitted). The patentability exception for abstract ideas, at issue in this case, embodies "the longstanding rule that '[a]n idea of itself is not patentable.' " *Id.* at 218, 134 S.Ct. 2347 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972)).

To determine whether patent claims are directed to patent ineligible subject matter, the Supreme Court has developed a two-step test commonly known as the "*Alice*" test. Under *Alice* step one, we consider whether the claims at issue are directed to, in this case, an abstract idea. *Id.* at 217, 134 S.Ct. 2347. If the claims are not directed to an abstract

idea, the *Alice* inquiry ends. *Id.* If we conclude that the claims are directed to patent ineligible subject matter, the inquiry continues to *Alice* step two, where we ask whether the claims ***1379** recite something "significantly more" than an abstract idea itself. *Id.* at 217–18, 134 S.Ct. 2347. The court determines whether the claims include elements sufficient to transform them into a patent-eligible application. *Id.*

II

Citing *Yu* and other precedent, the district court determined at *Alice* step one that representative claim 11 of the '954 patent is directed to patent ineligible subject matter. *Decision*, 2022 WL 658553, at *5. We disagree.

**[7] [8] [9] [10]** At *Alice* step one, we determine whether the claims are directed to patent ineligible subject matter. We often examine the "focus of the claimed advance over the prior art." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). We conduct this analysis by ascertaining the "basic character" of the claimed subject matter. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (citations omitted). In doing so, we must avoid describing the claims at a high level of abstraction, divorced from the claim language itself. *Enfish*, 822 F.3d at 1337.

**[11] [12] [13]** To determine the focus of the claimed advance at *Alice* step one, we look to whether the claims are directed to "a specific means or method that improves the relevant technology" rather than simply being directed to "a result or effect that itself is the abstract idea." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). An improved result, without more, is not enough to support patent eligibility at *Alice* step one. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019). When a claim "abstractly cover[s] results" without regard to a specific process or machinery for achieving those results, it creates preemption concerns because it "would prohibit all other persons from making the same thing by any means whatsoever." *McRO*, 837 F.3d at 1314 (quoting *Le Roy v. Tatham*, 55 U.S. 156, 175, 14 How. 156, 175, 14 L.Ed. 367 (1852)).

**[14]** Here, when read as a whole, claim 11 is directed to a specific means that improves the relevant technology. Claim 11 recites an improved POV camera through its combination of claim limitations and requirement that the claimed POV camera processor be configured to record low-and high-quality data streams in parallel, followed by the low-quality data stream's wireless transfer to a remote device. With the claimed POV camera, a user can remotely view and adjust the desired recording in real time, with the elimination of bandwidth limitations on wireless data transfer. *See* '954 patent, 20:9–16. The claims thus require specific, technological means—parallel data stream recording with the low-quality recording wirelessly transferred to a remote device—that in turn provide a technological improvement to the real time viewing capabilities of a POV camera's recordings on a remote device.

Importantly, the district court construed "generate" in representative claim 11 to require recording multiple video streams "in parallel." *Claim Construction Order*, 2018 WL 3428606, at *5. Thus, the claims do not cover other ways that a camera processor might generate multiple video streams of varying quality for wireless transmission, such as streams created "in sequence." *See id.* at *7. Rather, the claims are drawn to a "specific means or method that improves the relevant technology." *McRO*, 837 F.3d at 1314; *see also CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1368 (Fed. Cir. 2020).

The district court's decision characterizes the claims at an impermissibly high ***1380** level of generality. As we have noted, the practice of "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337 (citations omitted). For example, in this case, the district court's conclusion that the claims were "directed to a result or effect that itself is the abstract idea" disregards the disclosed technological means for obtaining a technological result. *Decision*, 2022 WL 658553, at *4 (internal quotations and citation omitted). The district court erred in its generalized articulation of the claimed advance of the claims, which all but ensured the incorrect conclusion that the claims were drawn to an abstract idea. *Enfish*, 822 F.3d at 1337.

GoPro contends that the claims simply employ known or conventional components that existed in the prior art at the time of the invention. *See, e.g.*, Appellee's Br. 25–26. Even so, that *alone* does not necessarily mean that the claim is *directed to* an abstract idea at step one. *See, e.g.*, *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (discussing *Thales Visionix Inc. v. United*

*States*, 850 F.3d 1343, 1348–49 (Fed. Cir. 2017)); *see also* *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1297 (Fed. Cir. 2020).

We also reject GoPro's argument that our decisions in other cases, particularly *Yu*, are dispositive in this case. Oral Arg. at 32:00–32:35. We characterized the claims in *Yu* as being "directed to the abstract idea of taking two pictures (which may be different at different exposures) and using one picture to enhance the other in some way." 1 F.4th at 1043. In *Yu*, there was no dispute that "the idea and practice of using multiple pictures to enhance each other has been known by photographers for over a century." *Id.* Stated differently, in *Yu*, we took note of a longstanding, fundamental practice in photography, without conducting a prior art search. Here, GoPro does not argue that a camera's recording two video streams in parallel and wirelessly transferring the lower quality video stream to a remote device for real time viewing and adjustment was a long-known or fundamental practice supporting patent ineligibility at *Alice* step one.

We also reject GoPro's argument that Contour's claims are simply directed to the abstract idea of wireless network communication and thus analogous to *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019). The claims in *ChargePoint* related to charging stations for electric vehicles, and more particularly local charging stations connected via a wireless network. *Id.* at 763, 766. We concluded that the claims were drawn to the abstract idea of "communication over a network," applied to the context of electric vehicle charging stations. *Id.* at 769. We explained that neither the specification nor the claims supported that "the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could." *Id.* at 768.

Here, claim 11 of the '954 patent describes more than wireless data transfer within a particular technological environment. Instead, claim 11 enables the claimed POV camera to "operate differently than it otherwise could," *id.*, by both recording multiple video streams in parallel and wirelessly transferring only one video stream, a lower quality stream, to a remote device.

The claims are directed to a technological solution to a technological problem. The written description discloses improving POV camera technology through specific means of generating high- and low-quality video streams in parallel and transferring a low-quality video stream to a remote device, and the claims reflect this improvement. The claims, therefore, recite ***1381** patent eligible subject matter at *Alice* step one.

**[15]** We hold that claim 11 of the '954 patent and claim 3 of the '694 patent are not directed to patent ineligible subject matter. We need not proceed to the second step of the *Alice* inquiry. *Alice*, 573 U.S. at 217, 134 S.Ct. 2347. Because the district court erred in concluding the claims were directed to an abstract idea, we reverse and remand for further proceedings.

Conclusion

We have considered GoPro's remaining arguments and find them unpersuasive. We hold that the asserted claims are directed to patent eligible subject matter. We thus reverse the district court's invalidity determination based on subject matter ineligibility under 35 U.S.C. § 101 and remand for further proceedings.

**REVERSED AND REMANDED**

Costs

Costs to Contour.

**All Citations**

113 F.4th 1373

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.